# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GLORIA MARIGNY,**
        **Plaintiff,**

       v.                                          **Case No. 04C0597**

**SELECT SPECIALTY HOSPITAL–MILWAUKEE, INC.,**
        **Defendant.**

## DECISION AND ORDER

### I. FACTS & BACKGROUND

Plaintiff Gloria Marigny alleges that her former employer, defendant Select Specialty Hospital–Milwaukee, Inc., violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. by discriminating against her based on her race (African-American), and retaliating against her after she complained about it. Specifically, plaintiff alleges that defendant discriminated against her by (1) assigning her a heavier workload than white nurses; (2) not allowing coworkers to assist her and thus causing them to shun her; (3) requiring her to remain at work when she was ill; and (4) falsely accusing her of sleeping on the job. Plaintiff alleges that defendant retaliated against her for complaining to management by treating her even worse and retaliated against her for filing an EEOC charge by discharging her. Before me now is defendant's motion for summary judgment.[1]

Plaintiff worked for defendant as a licensed practical nurse ("LPN") from May of 2001 through December of 2003, when defendant discharged her. She alleges that one of her supervisors, Mary Foster, discriminated against her as indicated above. Plaintiff

---

[1]Defendant also moves to supplement the record, which motion I will grant.

states that she complained about Foster's conduct to supervisor Mark O'Meara, but that he took no action, and Foster's behavior continued. Plaintiff states that after approaching O'Meara a second time and not getting action, she complained to Christine Froh, Senior Human Resources Manager, and that subsequently O'Meara discussed plaintiff's complaints with Foster. Plaintiff alleges that after she complained to Froh, Foster's treatment of her worsened. Plaintiff states that in September 2003, she met with Froh and O'Meara and advised them that she had contacted an attorney and the EEOC. On October 16, 2003, Foster complained to O'Meara that plaintiff had been observed sleeping on the job. Plaintiff denied this, but O'Meara issued her a final written warning, stating that another occurrence could result in termination. On December 10, 2003, plaintiff was involved in an altercation with Rose Williams, an African-American nurse. Williams states that plaintiff harassed and threatened her. On the same day, plaintiff was also alleged to have failed to respond to a patient's ventilator alarm. A number of defendant's high level managers investigated plaintiff's conduct and decided to terminate her. They advised plaintiff that the reasons for her termination were her behavior towards Williams and her failure to respond to the patient.

I will state additional facts in the course of the decision.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Material" facts are those facts that might affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute over such facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the

nonmoving party. Id. The movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 255.

## III. DISCUSSION

**A.    Claims Not Included in EEOC Charge**

Defendant contends that plaintiff may not proceed on two of her discrimination claims and one of her retaliation claims because she did not include them in the EEOC charge. Defendant refers specifically to plaintiff's claims that she was discriminated against by being assigned a heavier workload and by being falsely accused of sleeping on the job and her retaliation claim that supervisors treated her worse after she complained to management. Generally speaking, a Title VII plaintiff cannot assert in a lawsuit claims that she failed to include in her EEOC charge. Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved." Id. However, if the allegations in the charge and the claims asserted in the complaint are alike or reasonably related such that an EEOC investigation

3

nonmoving party. Id. The movant bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 255.

## III. DISCUSSION

**A.    Claims Not Included in EEOC Charge**

Defendant contends that plaintiff may not proceed on two of her discrimination claims and one of her retaliation claims because she did not include them in the EEOC charge. Defendant refers specifically to plaintiff's claims that she was discriminated against by being assigned a heavier workload and by being falsely accused of sleeping on the job and her retaliation claim that supervisors treated her worse after she complained to management. Generally speaking, a Title VII plaintiff cannot assert in a lawsuit claims that she failed to include in her EEOC charge. Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved." Id. However, if the allegations in the charge and the claims asserted in the complaint are alike or reasonably related such that an EEOC investigation

of the allegations in the charge would lead it to the claims asserted, a plaintiff may proceed with the claims. Id. (citing Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc)); Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996). Claims are not alike or reasonably related unless there is a factual relationship between them. W. & S. Life Ins. Co., 31 F.3d at 501. "This means that the EEOC charge and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." Id. (citing Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir. 1992)). In determining what claims are included in an EEOC charge, "it is the charge rather than the questionnaire that matters."[2] Novitsky v. Am. Consulting Eng'rs, L.L.C., 196 F.3d 699, 702 (7th Cir. 1999) (citing 42 U.S.C. § 2000e-5(b)). This is so because "[o]nly the charge is sent to the employer, and therefore only the charge can affect the process of conciliation." Id.

Plaintiff's November 20, 2003 EEOC Charge[3] states:

> I have been employed by respondent as a licensed practical nurse since May 2001. Presently, I am the only Black LPN on the night shift at that facility. After the first of the year 2003, Mary Foster, White, registered nurse became my supervisor. Since that time, I have been subjected to a different set of rules than White co workers. On one occasion in August 2003, I reported to work at 7:00 pm and around 8:30 pm, I was so sick, I requested to go home. My request was denied until 3:00 am that following morning.

---

[2]The purpose of an intake questionnaire is to "solicit information to enable the Commission to avoid the Intake of matters not within its jurisdiction." The questionnaire states that information provided on the form will be used to determine whether the EEOC "has jurisdiction over potential charges, complaints or allegations of employment discrimination and to provide such pre-charge filing counseling as is appropriate." (See Marigny Aff. Ex. 3 at 9.)

[3]On August 31, 2004, plaintiff filed a second EEOC charge relating only to her retaliatory discharge claim.

> White co workers are not subjected to the same insensitive treatment, they are allowed to go home immediately after the request.
>
> I am required to sign out and in when I leave the floor or go to the restroom. White co workers do not have the same requirement. White CNAs often refuse to assist me with patients needing more than normal assistance and are not penalized. I continually complain about the difference in treatment but management refuses to address my concerns. I was denied the option of not caring for a patient regardless of the specific circumstances. White co workers have this option. I was written up for making a feeding tube mistake, where as a White co-worker made the same error, but did not receive a written disciplinary action.
>
> Other Black coworkers have complained that they were treated different and subsequently quit because no corrective action was taken.
>
> I was not given a reason for being treated differently than White co-workers.
>
> I believe that I was discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Bykhovsky Aff. Ex. 35.)

In the charge, plaintiff did not allege that defendant discriminated against her by assigning her a heavier workload or by accusing her of sleeping on the job or that defendant retaliated against her for complaining to management. Further, these claims are not like or reasonably related to the claims in her charge, and they do not involve matters that the EEOC would have reasonably discovered by investigating the claims plaintiff included in her charge. See Rush, 966 F.2d at 1110 (stating that an EEOC charge and complaint are not alike or reasonably related where employee complained to EEOC of acts of discrimination and then sought judicial relief for other different acts). Plaintiff contends that I should nevertheless allow these claims to proceed because she included them on her intake questionnaire. However, while courts have "looked beyond the four corners of the EEOC charge form" where it "is clear that the charging party intended the [EEOC] to

5

investigate the allegations," Vela v. Vill. of Sauk Vill., 218 F.3d 661, 664-65 (7th Cir. 2000), they have done so only where the plaintiff submitted the additional information in a document filed contemporaneously with the charge, thus indicating that she intended to incorporate it in the charge. See, e.g., Rush, 966 F.2d at 1110-11 (considering plaintiff's handwritten "EEOC Affidavit" submitted on the same day as her EEOC charge); Box v. A&P Tea Co., 772 F.2d 1372, 1375 (7th Cir. 1985) (considering handwritten additions to typed charge); Sickinger v. Mega Sys., Inc., 951 F. Supp. 153, 157-58 (N.D. Ind. 1998) (considering charge questionnaire filled out on the same day as charge filed, under particular circumstances where employer could not claim surprise at the claim stated fully in the questionnaire, but not in the charge). However, in the present case, plaintiff filed her questionnaire two months before her charge, and her charge does not refer to the questionnaire. Moreover, she provided no indication that she intended the EEOC to investigate the allegations in the questionnaire. See Vela, 218 F.3d at 664-65 (stating that information included in the charge may be considered if "it is clear that the charging party intended the [EEOC] to investigate the allegations").

Plaintiff also argues that I should allow her to proceed on claims not presented in her charge because the omissions in the charge were caused by the EEOC caseworker's error. However,

> The [EEOC] charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves. Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it – as [plaintiff] did. If she had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.

6

Novitsky, 196 F.3d at 702. Thus, where a plaintiff has not been misled, misinformed or misdirected by the EEOC, considering the intake form is inappropriate. Id. Plaintiff provides no indication that the EEOC misled, misinformed or misdirected her. Nor does the fact that plaintiff was pro se change the result.

> [A]bsent equitable considerations that require otherwise [such as being misled, misinformed or misdirected by an EEOC staffer], a Title VII plaintiff who has access to counsel in connection with the receipt of an EEOC charge prepared by an EEOC staffer, and who adopts the draft as her formal charge by signing it, must live with the charge that she chose to sign and cannot blame the so-called 'omission' of allegations in that signed charge on the EEOC.

Knowles v. Trans Union LLC, No. 03C4952, 2005 U.S. Dist. LEXIS 58, at *14 (N.D. Ill. Jan. 3, 2005) (citing Novitsky, 196 F.3d at 703). Plaintiff does not show that she had no access to counsel. In fact, the record suggests that she may have retained counsel by the time she signed the charge in question. (See Bykhovsky Aff. Ex. 25) (stating on her August 31, 2004 EEOC charge that "[o]n October 20, 2003 my attorney sent the Respondent a letter regarding the discriminatory terms and conditions of employment and advising the Respondent that he was assisting me in filing with the EEOC"); (Marigny Aff. ¶ 55) (stating that "[i]n September of 2003 . . . I . . . told [Froh and O'Meara] . . . I was seeking assistance from the EEOC and had contacted an attorney"). In any case, plaintiff could have but did not file an amended charge.

In sum, because plaintiff failed to include in her EEOC charge her discrimination claims involving being assigned a heavier workload and being falsely accused of sleeping on the job and her retaliation claim involving receiving worse treatment for complaining to management, and for the additional reasons stated above, defendant is entitled to summary judgment on these claims.

**B.     Remaining Claims**

   **1.     Discrimination Claims**

Plaintiff claims that defendant discriminated against her by not permitting coworkers to assist her and thus causing them to shun her and by refusing to allow her to go home early when she was ill.  Under 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." Plaintiff proceeds under the indirect method of proof outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), under which she must first establish a prima facie case.  To do so, she must show that:  (1) she was a member of a protected class; (2) she was performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals were treated more favorably. Traylor v. Brown, 295 F.3d 783, 788 (7th Cir. 2002).  If she establishes a prima facie case, defendant must articulate a legitimate, non-discriminatory reason for its action, and plaintiff must then show that the employer's proffered reason is a pretext for discrimination. Id. With respect to both of plaintiff's remaining discrimination claims, defendant argues that plaintiff fails to establish that she was subject to an adverse employment action.

An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities."  Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1992).  Adverse employment actions typically include actions such as bestowing on an employee "a less distinguished title, a material loss of benefits,

8

significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id.; see also Markel v. Bd. of Regents of Univ. of Wis. Sys., 276 F.3d 906, 911 (7th Cir. 2002) (stating that "[t]ypically, adverse employment actions are economic injuries"). However, adverse employment actions are "not limited solely to loss or reduction of pay or monetary benefits. [They] can encompass other forms of adversity as well." Collins v. Ill., 830 F.2d 692, 703 (7th Cir. 1987). For example, "an adverse employment action might occur when an employer orders its employees to shun the plaintiff." Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1039 (7th Cir. 1998). However, shunning is only an adverse employment action when it causes "material harm" to plaintiff. Id. (citing Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 528 (8th Cir. 1998) (stating that shunning is not an adverse employment action where the plaintiff did not allege that the ostracism resulted in reduced salary, benefits, seniority or responsibilities)). Additionally, "conditions of employment that are designed to harass and humiliate employees because of their race" may also constitute adverse employment actions. Stockett v. Muncie Ind. Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000).

Plaintiff alleges that Foster and O'Meara refused to require other nurses to assist her in caring for patients and that as a result, they caused nurses to shun her. Even assuming that these allegations are true, however, plaintiff presents no evidence that she suffered any material harm such as reduced salary, benefits, seniority or responsibilities, see Flannery, 160 F.3d at 428, or that her job performance was affected. (See Marigny Aff. ¶ 6) (stating that "[i]n March of 2003, I received my second job performance evaluation from Mark O'Meara. I was rated as meeting or exceeding all my job expectations"). Thus, defendant's alleged failure to provide plaintiff with assistance does not rise to the level of

9

an adverse employment action, nor does the shunning that plaintiff allegedly suffered. See Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996) (stating that "not everything that makes an employee unhappy is an actionable adverse action"). Thus, defendant is entitled to summary judgment on this claim.

Plaintiff also alleges that defendant discriminated against her by not allowing her to immediately leave work while she was ill, which resulted in her vomiting in front of coworkers and being embarrassed. Plaintiff relies on Stockett to support this claim but her reliance is misplaced. There, the Seventh Circuit held that when an employer does not follow its "regular and legitimate" practices but instead subjects an employee to an experience that "harasses or humiliates," in that case a drug test, an adverse employment action occurs. Id. at 1001-02. In the present case, plaintiff presents no evidence that defendant did not follow a regular and legitimate practice in requiring plaintiff to stay at work until her replacement arrived. Nor does plaintiff present evidence that a supervisor intended to humiliate or harass her or knew or could have known that she would vomit in front of her coworkers. Thus, this claim also does not rise to the level of a Title VII violation. See Haywood v. Lucent Techs., Inc., 323 F.3d 524, 532 (7th Cir. 2003) (stating that "mere unhappiness and inconvenience are not actionable under Title VII"). Thus, defendant is entitled to summary judgment on this claim as well.[4]

---

[4]Even if I considered the discrimination claims that plaintiff did not include in her EEOC complaint, i.e., her claims that defendant imposed an overly heavy workload and falsely accused and reprimanded her for sleeping on the job, I would conclude that neither involved an adverse employment action.

First, although a disproportionately heavy workload assigned to an employee may constitute an adverse employment action, see Feingold v. New York, 366 F.3d 138, 153 (2d Cir. 2004); Zhou v. Pittsburgh St. Univ., 252 F. Supp. 2d 1194, 1216 (D. Kan. 2003), nothing in the record quantifies how much heavier plaintiff's workload was compared to the

10

**2.     Retaliatory Discharge Claim**

An employer may not retaliate against an employee for complaining about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a), Again, plaintiff relies on the indirect method of proof under which she must first establish a prima facie case. To do so, she must show that (1) she engaged in the protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Rogers v. City of Chi., 320 F.3d 748, 754 (7th Cir. 2003). If she establishes these elements, the burden shifts to the defendant to come forward with a

---

workload of her coworkers. Thus, plaintiff fails to show that her workload was disproportionately heavy or that it changed the nature or character of her job. See Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 504-05 (7th Cir. 2004) (stating that an adverse employment action is a "significant change in the claimant's employment status . . . that causes a substantial change in benefits" and that "[a] mere inconvenience or an alteration of job-related responsibilities will not suffice").
     Second, under Seventh Circuit precedent, reprimands must have an immediate and practical effect on job status in order to constitute an adverse employment action. See Oest v. Ill. Dep't of Corr., 240 F.3d 605, 613 (7th Cir. 2001) (holding that oral and written reprimands received by employee pursuant to employer's progressive disciplinary process did not implicate sufficiently tangible job consequences to constitute an adverse employment action, notwithstanding that each reprimand brought employee closer to termination, absent evidence of any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer or an advantageous increase in responsibilities); Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001) (holding that unjustified warnings and reprimands do not constitute adverse employment actions if plaintiff does not suffer any monetary losses or other tangible consequences as a result thereof). Plaintiff claims that she was suspended and lost wages because she was falsely accused of sleeping on the job. However, it is undisputed that on the day which plaintiff claims she was suspended and lost wages, plaintiff voluntarily chose not to come to work. (See Marigny Aff. at 155-56) (stating that O'Meara asked her to come to work but that she refused because she had not slept enough to work a twelve hour shift). Defendant did not cause her to lose a day of pay and thus the reprimand did not have an immediate and practical effect on her job status.

11

legitimate, non-invidious reasons for the adverse employment action which demonstrates that it "would have taken the adverse employment action against the plaintiff even if [it] had no retaliatory motive." Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002). Once the defendant presents a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to show that defendant's reason is pretextual. Haywood, 323 F.3d at 531 (citing Stone, 281 F.3d at 644). Neither party disputes that plaintiff filed an EEOC charge and thus engaged in protected activity, or that by being discharged she suffered an adverse employment action. However, defendant argues that plaintiff fails to establish a prima facie case because she fails to satisfy the second and fourth requirements – that she was performing her job according to her employer's legitimate expectations[5] and that she was treated less favorably than similarly-situated employees who did not file an EEOC charge. I address the latter requirement first.

A similarly situated employee is one who is "directly comparable to [the plaintiff] in all material respects." Bio v. Fed. Express Corp., 424 F.3d 593, 597 (7th Cir. 2005). In determining whether two employees are similarly situated a court must look at all relevant factors, the number of which depends on the context of the case. Spath v. Hayes Wheels Int'l-Ind., Inc., 211 F.3d 392, 397 (7th Cir. 2000). For example, "in disciplinary cases--in

---

[5]The Seventh Circuit discourages merging the analysis of the prima facie case with the pretext analysis. See Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997). However, in some instances, courts consider whether plaintiff was meeting the employer's legitimate expectations simultaneously with the issue of pretext because the issues are often intertwined. See, e.g., Jones v. Union Pacific R.R. Co., 302 F.3d 735, 742 (7th Cir. 2002); Gordon v. United Airlines, Inc., 246 F.3d 878, 886 (7th Cir. 2001) ("[The] issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext.") In the present case, because these two issues are intertwined, I will consider whether plaintiff was meeting defendant's legitimate expectations when I consider the issue of pretext.

12

which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason--a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. at 617-18. In fact,

> when different decisionmakers are involved, two decisions are rarely similarly situated in all relevant respects. Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently. These distinctions sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination.

Id. at 618 (internal quotations and citations omitted).

In the present case, plaintiff claims that she is similarly situated to three employees, Frank Hendricks, Mary Foster and Todd Coughlin, nurses who did not file EEOC charges but who violated defendant's rules and policies and were not terminated. However, for a number of reasons, I cannot conclude that these employees were similarly situated to plaintiff. First, different individuals made the discharge decisions. O'Meara made the decisions not to terminate Hendricks, Foster and Coughlin, and although he assisted in investigating the situation involving plaintiff, an entire management team was involved in the discharge decision. Regional Human Resources Director Mary Anne Barker made several trips to Milwaukee to investigate the incident involving plaintiff and Williams and

13

independently reviewed witness statements. Additionally, Barker obtained prior approval for the discharge from Vice President of Human Resources Jon Saich, who also investigated the incident. (See Barker Aff. ¶ 3-6; Saich Aff. ¶ 3-4). CEO Dennis Mattes also appears to have weighed in. (See Bykhovsky Aff. Ex. 22) (stating that "I intend to fire this employee today unless I am directed not to do so"), and Froh signed the termination document. (O'Meara Aff. Ex. D.) Plaintiff presents no evidence that Saich, Barker or Mattes played any part in the decisions concerning Hendricks, Foster or Coughlin. Thus, Hendricks, Foster and Coughlin are not similarly situated employees. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 508 (7th Cir. 2004) (finding employees disciplined by different supervisors than the supervisor who disciplined plaintiff not similarly situated).

Moreover, Hendricks is not similarly situated to plaintiff because he engaged in less serious conduct. See Radue, 219 F.3d at 617 (stating that the similarly situated requirement is satisfied when plaintiff and coworker engaged in similar conduct); Phillips v. Union Pac. R.R. Co., 216 F.3d 703, 706 (8th Cir. 2000) ("Employees are similarly situated when they are involved in the same misconduct or misconduct that is of 'comparable seriousness.'"). Defendant reprimanded but did not terminate Hendricks for violating its cultural diversity and employee sensitivity policies and for leaving defendant's facility for personal reasons on two separate occasions while remaining punched in on the time clock. However, unlike plaintiff, Hendricks was not alleged to have engaged in conduct that posed a direct threat to a coworker and a patient. (See Froh Aff. ¶ 55; O'Meara Aff. ¶ 20) (stating plaintiff's "conduct in harassing a co-employee and refusing to respond to a patient ventilator alarm is a much more serious offense than the conduct of

14

which Mr. Hendricks . . . engaged in, as nothing about Mr. Hendricks' conduct . . . posed a direct threat to a co-worker or patient safety").

Coughlin is not similarly situated to plaintiff because of differentiating circumstances. See Radue, 219 F.3d at 618 (stating that employees are not similarly situated if they are subject to "differentiating or mitigating circumstances as would distinguish their conduct or their employer's treatment of them"). Defendant reprimanded Coughlin for such conduct as shouting at a coworker, harassing a female employee, committing a medication error, reporting medical information on the wrong patient, and failing to assess a patient during a twelve hour shift. O'Meara subsequently admitted that he should have fired Coughlin after his last violation based on his record. However, it is undisputed that the only reason O'Meara did not fire Coughlin was because of an error in documenting Coughlin's previous infractions under the company's progressive disciplinary system. (See Bykhovsky Aff. Ex. 33) (indicating, on Coughlin's disciplinary action form, that "[t]he above errors should have resulted in the termination of Coughlin's employment. Due to an error in documentation with the previous final written warning his employment will continue"); (see also Froh Aff. ¶ 56) (stating that Coughlin was spared immediate termination because documentation supporting his final warning was lost or stolen). This error distinguishes Couglin's situation from plaintiff's, in which there were no errors in documenting her prior infractions.

Thus, by failing to identify other employees who are actually similarly situated, plaintiff fails to establish a prima facie case of retaliation. Thus, defendant is entitled to summary judgment on plaintiff's retaliatory discharge claim. See Coco, 128 F.3d at 1179. However, even if I assume that plaintiff established a prima facie case, I would still grant defendant's summary judgment motion because plaintiff fails to establish that defendant's

15

stated reason for terminating plaintiff – that she violated its policies concerning harassment of employees, violence in the workplace, and patient safety (see Saich Aff. ¶ 5; Barker Aff. ¶¶ 6, 8,), was pretextual. To establish pretext, plaintiff must show that her protected activity was the determining factor in her discharge, or that but for her protected activity she would not have been discharged. Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000). To establish pretext, "a plaintiff must show that the employer's proffered explanation is factually baseless, not the actual motivation for the decision, or insufficient to support the decision." Dyrek v. Garvey, 334 F.3d 590, 598 (7th Cir. 2003). Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish." Jordan, 205 F.3d at 343. In fact, "[s]o long as [the employer] honestly believes [its proffered] reasons, pretext has not been shown." Id.

Plaintiff first argues that defendant's reasons for dismissing her must be a pretext because she did not harass Williams or refuse to respond to the ventilator alarm. However, the issue is not the correctness of defendant's version of the events in question but whether defendant honestly believed the reports of its employees regarding plaintiff's action. "[A]rguing about the accuracy of the employer's assessment is a distraction . . . because the question is not whether the employer's reasons for a decision are 'right but whether the employer's description of its reasons is honest.'" Kariotis v. Navistar Int'l Transp. Corp., 131 F.3d 672, 677 (7th Cir. 1997) (quoting Gustovich v. AT&T Comms., Inc., 972 F.2d 845, 848 (7th Cir. 1992)). Plaintiff presents no evidence that the decisionmakers did not believe that she committed the alleged infractions. In deciding to terminate her, the decisionmakers reviewed and credited the accounts of Williams, Foster,

16

Stone and Scott Timmesch.[6] Thus, no reasonable jury could find pretext on the record before me.[7]

Plaintiff next argues that she establishes pretext based on the fact that O'Meara, Froh and Mattes concluded that she had committed the alleged violations soon after they were alleged and before they had heard from her. However, even though plaintiff would have preferred that the supervisors withhold judgment pending a more thorough investigation, Title VII does not require them to do so. See Jordan, 205 F.3d at 343 (stating that pretext requires more than a showing that the decision was "ill considered or foolish"). Before firing plaintiff, O'Meara, Froh and Mattes all heard the accounts of what occurred. Mattes recounted the events in detail in an e-mail. (See Bykhovsky Aff. Ex. 22.) That they credited such accounts is not a basis for a finding of pretext.

Plaintiff also contends that Mattes's December 11, 2003 e-mail indicates that defendant fired plaintiff because she complained of discrimination and attempted to persuade other African-American employees to file a discrimination claim against defendant. In the e-mail, Mattes stated that "[a]ccording to Rose [Williams] and in her prior statement, this past summer is when Linda Davis and [plaintiff] approached all [A]fro-American staff at Select to recruit for a racial discrimination suit. Linda Davis has a relative

---

[6]Plaintiff states that these written statements are inadmissable as hearsay and should not be considered in deciding the merits of defendant's motion for summary judgment. However, the witness statements are admissible for the purpose of establishing a non-discriminatory or retaliatory state of mind. See, e.g., Scherer v. Rockwell Int'l Corp., 975 F.2d 356, 358 n.2 (7th Cir. 1992) (holding reports of sexual harassment by other employees are admissible to show a decision-maker's state of mind or good faith belief for terminating plaintiff's employment).

[7]For the same reasons that she cannot establish pretext, she cannot establish that she was meeting her employer's legitimate expectations.

17

that was awarded a large sum of money and Linda seeks the same." (Bykhovsky Aff. Ex. 22.) He also stated that "[i]t is unfortunate that we have this to deal with but the time has come . . . I intend to fire this employee today unless I am directed not to do so." (Bykhovsky Aff. Ex. 22.) However, plaintiff takes Mattes's statement out of context. The balance of the email stated, in relevant part, that:

> Rose [Williams] tells me that [plaintiff] will not respond to patient needs if the patients are Rose's and has not since this past summer. According to Rose in her prior statement, this past summer is when Linda Davis and [plaintiff] approached all [A]fro-American staff at Select to recruit for a racial discrimination suit. Linda Davis has a relative that was awarded a large sum on money and Linda seeks the same.
> . . .
>
> In my conversation with Rose this morning she stated and documented that she is being harassed by [plaintiff] and that her life has been made miserable. Rose states that [plaintiff] and Linda have told the [A]fro-American staff that they should not interact or trust Rose and that she kisses white ass. Rose has resigned her position and is accepting employment at the [illegible] Rose is black. Rose will back up her documentation in person at any time, in any forum and with anyone.
>
> In my opinion, there is sufficient documentation with enough diversity that any other course would be negligent . . . and put myself and Select at greater risk. It is unfortunate that we have this to deal with but the time has come. I request a comprehensive review of all documents already submitted in addition to those we will be submitting this morning in order to determine your direction to me. I intend to fire this employee today unless I am directed not to do so.

(Bykhovsky Aff. Ex. 22.) Thus, when considered in context, Mattes did not state that he wanted to fire plaintiff for her recruiting efforts. Rather, he related what Williams reported earlier in the year about why she and plaintiff did not get along. Further, Mattes made no reference to plaintiff's then-pending EEOC charge or any discrimination claims she made

to management and did not suggest that he wished to fire her for any complaint or solicitation of African-American employees.

Plaintiff further contends that a reasonable factfinder could infer that defendant retaliated against her because it received information regarding the events of December 10, 2003 from Mary Foster. See Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (concluding that even where the plaintiff's supervisor may not have passed along discriminatory animus to the ultimate decisionmaker, that animus tainted his assessment of the plaintiff's performance, on which the decisionmaker did rely). However, plaintiff presents no evidence that the discharge decision was based upon information received from Foster. Rather, the record indicates that in making this decision, Saich and Barker considered statements obtained from Williams, Stone and Thimmesch. Moreover, nothing in the record indicates that Foster was aware that plaintiff had filed an EEOC charge or engaged in protected activity and thus the record does not support the inference that Foster attempted to retaliate against plaintiff for filing an EEOC charge. Thus, a reasonable jury could not infer retaliatory animus based on Foster's input.

Finally, plaintiff contends that she establishes pretext because defendant treated other similarly situated employees more favorably. See Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). However, as described above, plaintiff has not identified any similarly situated employees and thus plaintiff cannot establish pretext in this way.

19

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion for leave to supplement the summary judgment record is **GRANTED**.

**FURTHER, IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 6 day of June, 2006.

/s_____
LYNN ADELMAN
District Judge